**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

INTERNATIONAL ASSOCATION OF
CERTIFIED HOME INSPECTORS, a Colorado nonprofit
corporation,

      Plaintiff(s),

v.

HOMESAFE INSPECTION, INC,
a Mississippi corporation incorporated in 2003,
HOMESAFE INSPECTION, INC., a Mississippi
Corporation incorporated in 2014, and KEVIN SEDDON,

      Defendant(s).

---

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND
DAMAGES FROM RACKETEERING, CONSPIRACY TO ENGAGE IN A PATTERN
OF RACKETEERING ACTIVITY, AND OTHER RELATED CAUSES OF ACTION –
JURY TRIAL DEMANDED**

---

Plaintiff, the International Association of Certified Home Inspectors (InterNACHI), sues

the Defendants, as individuals operating a criminal enterprise, which has systematically and

continuously, over the prior ten (10) years, conducted a corrupt enterprise in violation of the

Racketeer Influenced and Corrupt Organization ("RICO") Act, all of which are continuing in

nature.  Plaintiff also seeks a declaration of rights and obligations, pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201.  Plaintiff alleges:

## I.   <u>NATURE OF THE CASE</u>

1. This is a civil action for violations of 18 U.S.C. § 1961 *et. seq.* ("Racketeer Influenced and Corrupt Organizations Act" or "RICO").   RICO addresses the corrupt abuse and misuse – usually overtly – of organizations, entities, business, institutions or even government agencies, such that superficially legitimate entities actually operate for criminal purposes irrelevant to the entity's purpose.

2. Plaintiff also seeks a declaration of rights and obligations, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, regarding a dispute between the parties pertaining to the rights claimed by the Defendant corporations to the use of infrared (IR) technology in home inspections.   Specifically, Plaintiff seeks a declaration of rights and obligations as it relates to the following patents: United States Patent No: US 7,445,377 B2 dated November 4, 2008; and United States Patent No: US 8,764,285 B2 dated July 1, 2014.  Plaintiff also seeks a declaration as to certain common law rights the Defendant corporations claim to own in IR technology in home inspections.

3. Plaintiff also seeks injunctive relief in the form of an Order prohibiting Defendants from continuing to engage in the illegal activity described herein.

## II.   <u>THE PARTIES</u>

4. The Plaintiff, InterNACHI, is a Colorado non-profit corporation, with a principal place of business at 1750 30th Street, Suite 301, Boulder, Colorado 80301.

5. The Defendant, Homesafe Inspection, Inc. incorporated in 2003 ("Homesafe 2003"), is a Mississippi corporation, having a principal place of business and mailing address at 604 South 16th Street, Oxford, Mississippi 38655.

6. The Defendant, Homesafe Inspection, Inc. incorporated in 2014 ("Homesafe 2003"), is a Mississippi corporation, having a principal place of business and mailing address at 604 South 16th Street, Oxford, Mississippi 38655.

7. The Defendant, Kevin Seddon, is a citizen of the State of Mississippi.  Defendant Seddon is and was at all times relevant to this action the President of and a director of Homesafe 2003 and Homesafe 2014.

### III.    <u>JURISDICTION AND VENUE</u>

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Jurisdiction is also proper pursuant to 18 U.S.C. § 1965, which allows for nationwide jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.  RICO addresses the corrupt abuse and misuse – usually overtly – of organizations, entities, business, institutions or even government agencies, such that superficially legitimate entities actually operate for criminal purposes irrelevant to the entity's purpose.

9. The Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) as the parties are from different states – Mississippi and Colorado.

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201, as the claims set forth herein involve a matter of actual controversy between the parties requiring a declaration of the rights and legal relations of the parties.

11. The Court has subject matter jurisdiction over this action as a substantial part of this action arises under the laws of the United States – 18 U.S.C. §§ 1341 and 1343.

12. The Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over Defendants because the Defendants committed certain unlawful acts or caused them to be committed within the State of Colorado, and elsewhere in the United States, in connection with the allegations of this lawsuit, and are causing injury to the Plaintiff in the State of Colorado and to Plaintiff's members in Colorado.  See, specifically, paragraph 44(s), 44(t), and 44(ff), as well as allegations pertaining to Defendant Homesafe's website.

14. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in Colorado.  See, allegations pertaining to Homesafe's website, and also see paragraphs 44(s), 44(t), and 44(ff).

## IV.     FACTS COMMON TO ALL COUNTS

15. InterNACHI is a Colorado nonprofit corporation and trade association with tax-exempt status under Section 501(c)(6) of the Internal Revenue Code.  InterNACHI

represents the interests of more than 17,000 home inspectors. InterNACHI is the largest association of home inspectors in the world and has members in every state in the United States.  In addition to bringing this action in its own right and on behalf of its members, InterNACHI brings this action as the assignee of numerous home inspectors that have assigned their claims against Defendants to InterNACHI.

16. Homesafe 2003 and Homesafe 2014 are Mississippi corporations that for years have falsely claimed to own the exclusive right to use infrared (IR) technology in home inspections as a result of patents and claimed common law rights.  Homesafe 2003 was first incorporated in Mississippi by Seddon in 2003, but was administratively dissolved on October 1, 2013.  Rather than have Homesafe 2003 reinstated, Seddon then incorporated a new corporation in Mississippi with the same name in 2014.  However, Seddon later caused the old Homesafe to be reinstated on August 27, 2015.  It is unclear whether there is any meaningful difference between Homesafe 2003 and Homesafe 2014, but Plaintiff alleges Homesafe 2014 may be the successor to Homesafe 2003.  Plaintiff further alleges that Homesafe 2003 and Homesafe 2014 are or may be alter egos or instrumentalities of each other.  Plaintiff further alleges that Seddon is or may be the alter ego of Homesafe 2003 and Homesafe 2014, and that he and other co-conspirators not yet named used both corporations to perpetuate a fraud as set forth in more detail herein.  Seddon caused Homesafe 2014 to be dissolved, on August 27, 2015.

17. Defendant Seddon is the President of Homesafe 2014 and was the President of Homesafe 2003.  Seddon is a U.S. citizen.

18. Sometime prior to October 23, 2013, the exact date being unknown to InterNACHI, an InterNACHI member telephoned InterNACHI and spoke with Mr. Nick Gromicko, InterNACHI's founder.  Mr. Gromicko was at InterNACHI's headquarters in Boulder, Colorado, when this conversation took place.  The member explained that Homesafe 2003 had sued him and that Homesafe claimed it owned a patent that gave it the exclusive right to use any form of infrared technology in home inspections.

19. Mr. Gromicko asked the member to provide details of the lawsuit and then contacted Homesafe 2003 by telephone from his Boulder office.  Mr. Gromicko spoke with Kevin Seddon, who represented that he was the President of Homesafe. InterNACHI believes Mr. Seddon was in Mississippi during this telephone call.

20. During the phone call, Mr. Seddon represented that Homesafe 2003 held patents that gave it the exclusive right to use any form of infrared technology in home inspections.  Mr. Seddon further stated that Homesafe 2003 would continue to sue individual home inspectors, including InterNACHI members, who were using any form of infrared technology in home inspections.

21. At all times relevant to this action, Homesafe 2014 and Homesafe 2003 maintained a public website that contained false representations concerning the extent of its patent rights.  This website was at all relevant times visible to users in Colorado.  Upon information and belief, Seddon controlled and approved the

content on the website.  These material misrepresentations on the website include but are not limited to:

a. "HomeSafe is the only home inspection company that offers advanced inspections utilizing infrared and acoustic technologies which can, in effect, "see" and "hear" through the walls, floors and ceilings of a property."   This is false, as many inspectors use infrared technologies.

b. Homesafe owned a patent on "equipment."   In truth, neither Homesafe has no patent on infrared equipment *per se*.

c. "These patents cover the use of an infrared camera to locate many thermal anomalies - including, but not limited to, air quality and energy issues, water intrusion problems and electrical and wiring hazards."  In truth, neither Homesafe has an exclusive right to use infrared cameras, but only on a specific process that involves using them.

d. **"Patent No. 7,369,955 - Residential Indoor Environmental Quality Inspection Method:** This patent covers the usage of an infrared camera to locate any thermal anomaly - including but not limited to an uncontrolled or hidden water intrusion - in conjunction with obtaining data relating to indoor air quality, including visual confirmation of mold, collection of mold samples, measurement of relative humidity, installation of a constant air/gas

monitor system and/or other measurements including air pressure measurements. A thermal anomaly is an unexplained difference in temperature from one area of a house to another, often indicating a problem that can't be detected by ordinary means. Thermal anomalies signify a problem with faulty wiring, hidden moisture, missing insulation, heat/energy loss, termite infestations and more." In truth, neither Homesafe has a patent on the use of infrared technology to find thermal anomalies, but only a patent on a particular process that uses infrared technology.

e. "**Patent No. 7,445,377 - Non-Destructive Residential Inspection Method and Apparatus:** This patent covers Homesafe's method for creating a "thermal window," that is, preparing a house for an IR inspection by creating a temperature differential between the inside and the outside of the house, followed by obtaining temperature profiles of the house's interior and exterior components. These temperature profiles are then analyzed to uncover thermal anomalies indicating problems such as moisture intrusion or electrical issues. This method helps to create more optimal conditions for efficient usage of IR and better interpretation of IR data in the inspection process." In truth, this patent covered seven claims. The first claim was not to the use of infrared technology *per se*, but was rather a claim to a specific

process that included the use of infrared technology by creating a ten-degree temperature differential. The other six claims pertained to methods used to attempt to identify problems in a structure's electrical system. The patent doesn't even apply to the creation of ANY temperature differential. Neither Homesafe owns the exclusive right to the creation of any temperature differential at all.

22.  Upon information and belief, Mr. Gromicko and Mr. Seddon communicated by email following their telephone conversation while Mr. Gromicko was in Colorado, and in those emails Mr. Seddon again made the representations he had made during the phone call with Mr. Gromicko.   Mr. Gromicko was very concerned about the prospect of Homesafe filing large numbers of lawsuits against InterNACHI members because most home inspectors operate on a thin margin and simply can't afford to retain counsel to represent them in litigation.[1]  Additionally, a home inspector that must take time off to participate in litigation is losing money. Mr. Gromicko explained that he wanted to meet with Mr. Seddon as soon as possible to discuss the issue and to try to arrive at a resolution.[2]  Mr. Seddon agreed to meet with Mr. Gromicko in Las Vegas, Nevada, and they met there in

---

[1] This concern was furthered by the fact that Homesafe had a longstanding pattern of sending dozens of letters to home inspectors across America threatening to sue them for alleged patent infringement, and requesting that the home inspector execute a license agreement as well as remit a license fee or sign a document promising never to use IR technology.   As a result of such letters and the statements on Homesafe's website, it was a common (but mistaken) belief by many in the industry that Homesafe owned the exclusive right to use IR technology in home inspections.

[2] Most home inspectors do not use IR technology in home inspections, but some do. Mr. Gromicko did not want Homesafe to sue InterNACHI members using IR technology.

2013, where Seddon again falsely represented that Homesafe owned the exclusive right to use IR in home inspections.

23. InterNACHI then signed a contract with Homesafe on October 23, 2013, after Homesafe 2003 had been dissolved and before Homesafe 2014 had been formed. Seddon never told InterNACHI Homesafe had been dissolved when InterNACHI entered into this contract.  InterNACHI later incurred costs and attorneys fees in defending a breach of contract lawsuit Homesafe brought against InterNACHI after Seddon induced InterNACHI to enter into the contract using the false representations set forth herein.

24.  Sometime later, in 2015, InterNACHI researched the records of the U.S. Patent and Trademark Office (USPTO), and learned that, contrary to what Seddon had represented, and contrary to what the corporate defendants had represented for years, the corporate defendants do not have a patent that grants them the exclusive right to use any form of infrared technology in home inspections.

25.  On November 4, 2008, the USPTO granted Patent No. 7445377 to Homesafe 2003. This patent covered seven claims.  The first claim was not to the use of infrared technology *per se*, but was rather a claim to a specific process that included the use of infrared technology.  The other six claims pertained to methods used to attempt to identify problems in a structure's electrical system.  The application for this patent was filed by Kevin Seddon and Peng Lee on March 11, 2004, both of whom assigned their interest in it to the Homesafe on July 20, 2005.

26. On July 1, 2014, the USPTO granted Patent No. 8764285 to Homesafe 2003.  This patent covered two claims, neither of which patented the right to the use of infrared technology *per se*.  The first claim was to a computerized method for facilitating inspection of a building, and the second pertained to the use of the method identified in the first claim to detect an electrical defect. The application for this patent was filed by Kevin Seddon and Peng Lee on September 12, 2008, both of whom assigned their interest in it to the Homesafe 2003 retroactive to July 20, 2005.

27. For any Racketeer Influenced and Corrupt Organization case, it is imperative to distinguish between legitimate organizations and business and the abuse of those entities for illegal purposes by the corrupt "enterprise."

28. The pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed herein, were done with the purpose of financial gain and were done within the prior ten (10) years and continuing.

29. By the acts alleged herein, Defendants, each and every one of them, jointly and severally have aided and abetted and conspired to violate laws through their ongoing criminal enterprise as, more specifically, set forth below.   The participants in the criminal enterprise may include others not named in this Complaint.  These others may include other officers of Homesafe or others acting on Homesafe's behalf, including Homesafe's attorneys that authored and send the threatening and deceptive letters detailed below.  These attorneys may include, but

are not necessarily limited to, Stephan L. McDavid, Jay P. Carmean, and R. Quentin Whitwell.

30. The law presumes that a person intends the obvious results of their actions.

31. The predicate offenses, outlined below, were both the but for and proximate causes of injuries to Plaintiff and its members.

## COUNT ONE:
### *Federal Civil RICO 18 U.S.C. § 1962(c)*

32. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.  Further, the allegations in any Count are incorporated into all other Counts.

33. Defendants violated RICO and the Plaintiff and its members were injured as a direct and proximate result. The injuries to Plaintiff's members include damages suffered by members who paid a license fee to the corporate defendants under false pretense, and those members that refused to use IR technology for fear of being sued by the corporate defendants.

31. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

34. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the previous paragraphs, and as further set forth below.

35. The Enterprise:  Defendants Homesafe 2003, Homesafe 2014, and Kevin Seddon, with help from others not yet named, formed an association-in-fact for the common and continuing purpose described herein and constitute an enterprise

within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. The goal of the enterprise was to purposely deceive home inspectors into wrongly believing that Homesafe 2003 and Homesafe 2014 owned the exclusive right to use IR technology in home inspections and to thereby scare home inspectors into paying the corporate defendants a licensing fee if they were using or intended to use any form of IR technology – even though Homesafe 2003 and Homesafe 20014 never owned the exclusive right to use IR technology in home inspections. As a result of the enterprise, some home inspectors paid a license fee to Homesafe 2013 or Homesafe 2014 even though they were not using one of the corporate defendant's patented processes, while others simply decided to refrain from using IR technology altogether.

36. Alternatively, the corporate defendants, Kevin Seddon, and others not named that aided them, each constitute a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

37. Alternatively, the corporate defendants, Kevin Seddon, and others not named that aided them, together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

38. Each enterprise has engaged in, and their activities have affected foreign commerce.

39. <u>Pattern of Racketeering Activity</u>: Defendants, all of whom are associated with, the enterprise did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5) and 1962(c).   The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.   Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

40. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below.   Defendants each committed at least two (2) such acts or aided and abetted such acts.

41. The acts of racketeering where not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.   Further the acts of racketeering by Defendants have been continuous.   There was repeated conduct during a period of time beginning in approximately 2003 and continuing to the present, and there is a continued threat of repetition of such conduct.

42. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.   Rather, they existed separate and apart from the pattern of racketeering activity.    Upon information and belief, Defendants have had, and do have, legitimate business plans outside of the pattern of racketeering activity.

43. Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

44. <u>Predicate Act: Use of Mails and Wires to Defraud InterNACHI in Violation of 18 U.S.C. §§1341 and 1343</u>: Defendants committed acts constituting indictable offenses under 18 U.S.C. §§1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud InterNACHI and its members, or to obtain money from InterNACHI or its members, by means of false or fraudulent pretenses, representations or promises.  For their purpose of executing their scheme or artifice, Defendants caused delivery of various documents by the U.S. mails, or by private or commercial interstate carriers, or received same therefrom.  Defendants also transmitted, or caused to be transmitted, by means of wire communications in interstate or foreign commerce various writings, signs and/or signals.  The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.  These acts were done intentionally and knowingly with the specific intent to advance the Defendants' scheme or artifice.  In addition to the false and misleading statements Homesafe 2003 and Homesafe 2014 published on the Homesafe website, Plaintiff alleges Defendants, at a minimum, engaged in or caused the following acts:

a. Sending a threatening letter from its lawyer to an inspector on April 28, 2005, stating, "If you are in fact using infrared equipment for the purposes of home inspection and/or are claiming to be performing the same types of services as Homesafe Inspection, Inc., you may very well be in violation of patent law and could likely be liable for enormous damages to our company for so doing." Homesafe knew or should have known at this time that it did not own the exclusive right to use IR technology in home inspections, but rather owned a very narrow process not used by most home inspectors and of little value to them.

b. Sending a threatening letter from its lawyer to Thermasearch, Inc. on Conway, Arkansas, on November 24, 2008, stating, "We are advised that you have engaged in the use of infrared technology in your business without first obtaining a license or other right from HomeSafe."  Note that this letter, typical of Homesafe's threatening letters, suggests *any* uses of IR technology in a home inspection was a violation of Homesafe's rights.

c. Sending a threatening letter from its lawyer to a home inspector named Michael Woodbury in Hawaii on April 1, 2011, stating that if Mr. Woodbury would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

d. Sending a threatening letter from its lawyer to a home inspector named Sean Robertson in Phoenix, AZ on April 1, 2011, stating that if Mr. Robertson would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

e. Sending a threatening letter from its lawyer to a home inspector named David Andersen in Clarksville, TN on April 1, 2011, stating that if Mr. Andersen would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

f. Sending a threatening letter from its lawyer to a home inspection company in Vermont named WiseEyes Home and Property Inspections Inc. on February 11, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

g. Sending a threatening letter from its lawyer to the same Vermont home inspector on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

h. Sending a threatening letter from its lawyer to a home inspection company in Starkville, MS on February 8, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

i. Sending a threatening letter from its lawyer to the same home inspector named Chris Sears in Starkville, MS, on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

j. Sending a threatening letter from its lawyer to a home inspection company in Johnsonville, SC on February 1, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

k. Sending a threatening letter from its lawyer to the same home inspector in South Carolina named Hubert Miles on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

l. Sending a threatening letter from its lawyer to a home inspection company in Bloomfield Hills, MI on February 8, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

m. Sending a threatening letter from its lawyer to a home inspection company in Bedford Hills NY on February 8, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

n. Sending a threatening letter from its lawyer to the same NY home inspector named Carl Santina in Bedford Hills, NY on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

o. Sending a threatening letter from its lawyer to a home inspection company in Garden City Park, NY on February 1, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

p. Sending a threatening letter from its lawyer to the same NY home inspector named Carlos Roldan in Garden City Park, NY in Bedford Hills, NY on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

q. Sending a threatening letter from its lawyer to a home inspection company in Madison, AL on February 8, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

r. Sending a threatening letter from its lawyer to the same AL home inspector's lawyer in Alabama on April 1, 2011, stating that if the inspector would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating that they will never use infrared in a home inspection."

s. Sending a threatening letter from its lawyer to a home inspection company in **Loveland, Colorado** on February 1, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

t. Sending a threatening letter from its lawyer to the same **Colorado** home inspector's lawyer on April 1, 2011, stating that if the inspector would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating that they will never use infrared in a home inspection."

u. Sending a threatening letter from its lawyer to a home inspection company in Torrance, CA on February 1, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

v. Sending a threatening letter from its lawyer to the same home inspector in California named Michael Boeger on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating you will never use infrared in a home inspection."

w. Sending a threatening letter from its lawyer to a home inspection company in Oakland, Maine, on February 8, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

x. Sending a threatening letter from its lawyer to the lawyer for the same Maine home inspector on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating that they will never use infrared in a home inspection."

y. Sending a threatening letter from its lawyer to a home inspection company in Nazareth, PA on February 1, 2011, stating that the inspector must

"desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

z. Sending a threatening letter from its lawyer to the lawyer for the same PA home inspector on April 1, 2011, stating that if he would not pay a licensing fee, to avoid being sued he must "sign an affidavit and settlement agreement stating that they will never use infrared in a home inspection."

aa. Sending a threatening letter from its lawyer to a home inspection company in Nashua, NH on February 1, 2011, stating that the inspector must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

bb. Sending a threatening letter to a home inspector in St. Albans, VT on February 8, 2011, stating he must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

cc. Sending a threatening letter to the same Vermont inspector on April 1, 2011, stating that the inspector must sign an agreement "which clearly indicates that you have chosen to no longer use infrared.

dd. Sending a threatening letter to a home inspector in Spirit Lake, ID on February 8, 2011, stating he must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

ee. Sending a threatening letter to a home inspector in Greencastle, IN on April 1, 2011, stating to avoid being sued, he must "sign an affidavit and

settlement agreement stating that you will never use infrared in a home inspection."

ff. Sending a threatening letter to a home inspector named David Keating in **Parker, Colorado** on February 8, 2011, stating to avoid being sued he must, "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

gg. Sending a threatening letter to the same inspector in Parker, CO on April 1, 2011, stating to avoid being used he must "sign an affidavit and settlement agreement stating that you will never use infrared in a home inspection."

hh. Sending a threatening letter to a home inspector named Brett Kelley in Prospect Heights, IL in February 1, 2011, stating that to avoid being sued, he must "desist use of infrared" and sign an agreement "which clearly indicates that you have chosen to no longer use infrared."

45. Defendants continued to send such letters even after several lawyers wrote them and informed them that their patents did include the exclusive right to use IR technology in home inspections.

46. Defendants carried out their scheme in different states and could not have done so unless they used the U.S. mails, or private commercial interstate carriers or interstate wires.  In furtherance of their scheme alleged herein, the Defendants communicated amongst themselves and with Plaintiff in furtherance of the scheme to defraud Plaintiff and its members.   These communications were typically

transmitted by wire (i.e., electronically) and/or through the U.S. mails or private or commercial carriers.

47. The Defendants' shared objective was and is to obtain funds from home inspectors, including Plaintiff's members, in the form of a "licensing agreement" and to defraud the Plaintiff and its members by representing it is the owner of technology that it clearly does not own.

48. Plaintiff and its members reasonably and justifiably relied upon the Defendants' false representations, false pretenses and deceptive communications, and Plaintiff and its member have been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.  Further, Defendants damaged the public at large by causing home inspectors to refrain from using IR technology, thus preventing home inspectors from using technology that could detect heat loss and would have helped make homes more energy efficient.  Defendants' conduct therefore indirectly harmed the national interests  of the United States by deterring home inspectors from checking for energy loss, thus increasing American dependence on foreign oil.

49. Continuity of Conduct: Defendants' violations of state and federal law, as set forth herein, each of which directly and proximately injured Plaintiff and other market participants, constituted a continuous course of conduct spanning from a period from approximately 2005 to present (and continuing), which was intended to obtain money through false representations, fraud, deceit and other improper and

unlawful means.  Therefore, said violations were a part of a pattern of racketeering activity in accordance with 18 U.S.C. §§1961(1) and (5).

50. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. §1962(c).

51. The unlawful actions of each of the Defendants, have directly, illegally and proximately caused, and continue to cause, injuries to the Plaintiff in its business. Plaintiff seeks an award of damages in compensation for, among other things, the money it stole from Plaintiff, Plaintiff's assignees, and Plaintiff's members who may assign their claims to Plaintiff while this action is pending.

52. Plaintiff accordingly seeks an award of three times the damages it sustained, and the recovery of reasonable attorney fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## COUNT TWO:
### *Conspiracy to Violate Federal Civil RICO: 18 U.S.C. § 1962(d)*

53. In violation of 18 U.S.C. §1962(d), each of the Defendants knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged in the paragraphs set forth above.

54. The conspiracy commenced at least as early as 2005 and is ongoing.

55. The conspiracy's purposed was/is to divert money from Plaintiff, Plaintiff's assignees, and Plaintiff's members, to their own benefit and to facilitate the payment of bribes in an effort to defraud Plaintiff and its members.

56. Each Defendant committed at least one overt act in furtherance of such conspiracy. The acts in furtherance of the conspiracy included, but is not limited to, the following: misleading the Plaintiff and its members as to the technology the corporate defendants owned and attempting to obtain monies from the Plaintiff and its members by offering to sell "licensing fees" to Plaintiff's assignees and members as a result of its false representations of technology ownership.

57. Even if some of the Defendants did not specifically agree to harm Plaintiff or its assignees or members specifically, the purpose of the acts they engaged in was to advance the overall objective of the conspiracy, and the harm to Plaintiff, its assignees, and its members was a reasonably foreseeable consequence of Defendants' activities.

58. Plaintiff, its assignees, and its members have been injured, and continue to be injured by Defendants' conspiracy in violation of 18 U.S.C. §1962(d).   The unlawful actions of each of the Defendants have directly, illegally and proximately caused, and continue to cause injuries to Plaintiff, its assignees, and its members in their business and/or property.   Plaintiff seeks an award of damages in compensation for, among other things the money it stole from Plaintiff, its assignees, and its members.

59. Plaintiff accordingly seeks an award of three times the damages it sustained, or that its assignees sustained, and the recovery of reasonable attorney fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

### COUNT THREE:
*Declaratory Judgment: 28 U.S.C. § 2201*

60. Plaintiffs seek a declaratory judgment against Defendant Homesafe Inspections, Inc. for the purpose of determining a question of actual controversy among the parties and terminating uncertainty and controversy among the parties as set forth herein.  Specifically, Defendant Homesafe contends, and has publicly represented, that it owns the exclusive right to the use of infrared technology in home inspections, and bases said belief on the ownership of the following patents: United States Patent No: US 7,445,377 B2 dated November 4, 2008; and United States Patent No: US 8,764,285 B2 dated July 1, 2014.

61. As outlined above, antagonistic claims and adverse legal interests are present between the Plaintiff and the Defendants which have been the source of great legal debate, and which will necessitate inevitable litigation.  Defendants have purposely created great confusion in the home inspection industry as to the extent of their rights in IR technology, to the detriment of the industry and the public, and it is within this Court's power to eliminate that confusion.

62. As a result of the claims referenced above, there exists an actual controversy of a justiciable issue between the parties within the jurisdiction of this Court, which

involve the rights and liabilities of the parties, and full and complete relief cannot be afforded in any other action.

63. A declaratory judgment by this Court will serve to clarify the legal relations at issue and afford the parties complete relief from the uncertainty and controversy giving rise to this Count Three.

## COUNT FOUR:
### *Injunctive Relief*

64. Plaintiff asks the Court to for a preliminary and permanent injunction prohibiting Defendants from continuing to engage in the illegal conduct complained of herein. Specifically, Plaintiff seeks an injunction prohibiting Defendants from falsely representing it owns any rights in IR technology in home inspections other than those rights set forth in the specific processes in the patents the USTPO granted to Homesafe 2003.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

A. On Counts One and Two:

    a. An award of three times the damages it sustained, which shall be determined at trial, as well as the recovery of reasonable attorney fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

B. <u>On Count Three</u>:

    a. A declaration stating that Defendant, Homesafe Inspections, Inc., does not own the exclusive right to use of infrared technology in home inspections, and owns no rights in IR technology other than the specific rights in the processes it has obtained patents for.

    b. A declaration stating what, if anything, is specifically owned by Defendant Homesafe Inspections, Inc. as it relates to both United States Patent No: US 7,445,377 B2 dated November 4, 2008 and United States Patent No: US 8,764,285 B2 dated July 1, 2014.

C. <u>On Count Four</u>:

    a. Injunctive relief as set forth therein.

D. Any other relief the Court deems just and proper.

## VI.   <u>JURY DEMAND</u>

**Plaintiffs respectfully demand a jury trial on all issues so triable.**

**Dated: April 30, 2017**

                     Respectfully submitted,

                     s/ Mark Steven Cohen

                     ***Mark Cohen, J.D., LL.M.***
                     P.O. Box 19192
                     Boulder, CO 80308
                     Telephone: (303) 638-3410
                     FAX: N/A
                     E-mail: mark@cohenslaw.com
                     Attorney for InterNACHI