IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01065-RBJ

INTERNATIONAL ASSOCIATION OF CERTIFIED HOME INSPECTORS,
 a Colorado nonprofit corporation,

    Plaintiff,

v.

HOMESAFE INSPECTION, INC., a Mississippi corporation incorporated in 2003;
HOMESAFE INSPECTION, INC., a Mississippi corporation incorporated in 2014; and
KEVIN SEDDON,

    Defendants.

---

ORDER ON MOTION TO DISMISS

---

This matter is before the Court on defendants HomeSafe Inspection, Inc.'s ("HomeSafe") and Kevin Seddon's motion to dismiss plaintiff International Association of Home Inspectors' ("InterNACHI") amended complaint, ECF No. 23. For the reasons stated below, defendants' motion to dismiss is GRANTED.

## FACTS

InterNACHI is a Colorado non-profit corporation and trade association representing more than 20,000 home inspectors across the United States. ECF No. 22 at 5. HomeSafe is a Mississippi corporation that claimed to own the exclusive right to use infrared technology in home inspections. *Id.* at 6. Kevin Seddon is the President and a director of HomeSafe.[1] *Id.* at 3. InterNACHI and HomeSafe first got involved in 2013 after an InterNACHI member explained to

---

[1] HomeSafe has existed in two iterations: HomeSafe 2003 and 2014. ECF No. 22 at 6. It appears that the two iterations were successors and/or alter egos, and there does not appear to be any material difference between them. *Id.*

InterNACHI's founder, Nick Gromicko, that he had been sued by HomeSafe. *Id.* at 7. HomeSafe had claimed that it owned a patent giving it the exclusive right to use infrared technology in home inspections and had sued the InterNACHI member for ostensibly violating that patent by using HomeSafe's technology. *Id.* Mr. Gromicko contacted Mr. Seddon at HomeSafe about the issue, at which point Mr. Seddon represented that HomeSafe held patents giving it the exclusive right to use infrared technology in home inspections and indicated that HomeSafe would continue suing home inspectors who used infrared technology in their inspections. *Id.* at 8. Following this conversation, Mr. Gromicko and Mr. Seddon continued to communicate by email, and InterNACHI alleges that Mr. Seddon continued to make representations about its patent rights. *Id.* Soon thereafter, Mr. Gromicko signed a license agreement on behalf of InterNACHI with Mr. Seddon, under which InterNACHI would provide an opportunity for its members to obtain a license to use HomeSafe's technology. ECF No. 23-6.

A. <u>State Court Litigation</u>.

In January 2015 HomeSafe sued InterNACHI in the circuit court of Lafayette County, Mississippi. ECF No. 23 at 3. In that suit, HomeSafe alleged that InterNACHI breached the parties' license agreement, and it raised claims for violation of the Mississippi Fair Trade Practices Act, unfair competition, unjust enrichment, breach of contract, and conversion. *Id.* In January 2016 InterNACHI filed an amended answer and counterclaim against HomeSafe and a third-party complaint against Mr. Seddon. *Id.* InterNACHI alleged that HomeSafe had misrepresented its patent rights to InterNACHI and its members to induce InterNACHI to enter the license agreement. ECF No. 23-1 at 13. InterNACHI thus asserted counterclaims of fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, declaratory

2

judgment, and rescission of the contract. *Id.* at 13–15. Additionally, InterNACHI noted in its amended answer that although it was not at the time seeking to add a claim under 18 U.S.C. § 1961 *et seq.* ("Racketeer Influenced and Corrupt Organizations Act" or "RICO"), it was reserving the right to do so because there "is evidence Plaintiff violated the federal wire fraud statute" and the federal mail fraud statute. *Id.* at 11. Although InterNACHI did not add a RICO claim in the state court suit, it threatened to do so again at the close of discovery in May 2016 if the parties could not reach a settlement. ECF No. 23 at 4.

In December 2016 the Mississippi state court granted HomeSafe's motion for summary judgment on InterNACHI's counterclaims. ECF No. 23-5. InterNACHI has admitted that summary judgment was granted because it "was unable to specifically prove damages under Mississippi law." ECF No. 26 at 4. The Mississippi case is set for trial, and deadlines to assert additional claims have passed. ECF No. 23 at 4. As such, HomeSafe contends that the state court order granting summary judgment is a final adjudication on the merits of InterNACHI's counterclaims.

B. Present Litigation.

In the present suit against HomeSafe and Mr. Seddon, InterNACHI relies on much of the same factual background as in its state counterclaims. *See* ECF No. 22 at 5–12 (recounting the same background about Mr. Gromicko's and Mr. Seddon's communications and negotiations leading to a contract, and relying on the same alleged misrepresentations about the same HomeSafe patents). Unlike its state counterclaims, however, InterNACHI's complaint in the instant case raises claims for RICO violations and conspiracy to violate RICO (hereinafter, the "RICO claims"). *Id.* at 14. InterNACHI also seeks a declaration of rights and obligations with respect to HomeSafe's patents and common law rights to infrared technology, and it seeks

injunctive relief from HomeSafe's alleged continued illegal activity. *Id.* In support of these claims InterNACHI alleges that HomeSafe and Mr. Seddon misled InterNACHI and its members about the technology HomeSafe owned in an attempt to obtain licensing fees; fraudulently induced Mr. Gromicko into entering a contract; and conducted a "continuing pattern of racketeering activity" by communicating via mail or wire with InterNACHI members to deceive them into believing that they were required to pay a licensing fee to use infrared technology and that they would be sued for using that technology without a license. *Id.* at 22, 15. As evidence of such communications, InterNACHI cites 34 "threatening letter[s]" from HomeSafe to InterNACHI inspectors between 2008 and 2011. *Id.* at 18–24. InterNACHI thus alleges that its members were injured when they paid license fees to HomeSafe under false pretenses or when they refused to use infrared technology out of fear that they would be sued if they did. *Id.* These damages are distinct from those alleged in the Mississippi state counterclaims.

## STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to

relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## ANALYSIS

HomeSafe raises five reasons to dismiss InterNACHI's complaint.[2] Because the doctrine of res judicata is dispositive, I need not discuss HomeSafe's alternative arguments. HomeSafe seeks to have InterNACHI's claims for RICO violation, conspiracy to violate RICO, declaratory relief, and injunctive relief dismissed because they are barred by res judicata. Since InterNACHI's state counterclaims were dismissed on summary judgment, HomeSafe argues that InterNACHI's closely related RICO claims, which should also have been raised in the state court, must now be dismissed from federal court.

As an initial procedural note, HomeSafe's res judicata argument is premised on matters outside InterNACHI's complaint, including InterNACHI's counterclaims before the Mississippi state court and that court's order on summary judgment. Although InterNACHI has not objected to my considering these matters, a court generally must convert a motion to dismiss to a motion for summary judgment when the court considers "matters outside the pleadings." Fed. R. Civ. P. 12(d). However, it need not do so "if it takes judicial notice of its own files and records, as well as facts which are a matter of public record. . . . The files in the state-court disciplinary proceedings and the two prior cases . . . clearly fall into these excepted categories." *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012) (citation omitted). As a result, I need not convert the instant motion to dismiss into a motion for summary judgment in order to take judicial notice of the Mississippi state court records that are relevant to the present federal case.

---

[2] HomeSafe's additional reasons are: Mississippi's doctrine of compulsory counterclaims; claim splitting and *Colorado River* abstention; the *Noerr-Pennington* doctrine; lack of venue; and failure to properly allege a RICO claim based on a distinct enterprise and participants. *See* ECF No. 23 at 1–2.

5

The preclusive effect of the Mississippi state court decision in federal court is controlled by 28 U.S.C. § 1783, which provides that state court judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." The court "must, therefore, ascertain what preclusive effect [Mississippi] would give its own decision before we may know what effect it should be given in the federal court." *Stifel, Nicolaus & Co., Inc. v. Wollsey & Co., Inc.*, 81 F.3d 1540, 1544 (10th Cir. 1996). As a result, I will assess the Mississippi law of res judicata to determine what effect to give the prior state court action.[3]

According to the Mississippi law of res judicata, "'when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from re-litigating claims that were decided or could have been raised in that action.'" *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005) (quoting *Miss. Dep't of Human Services v. Shelby*, 802 So .3d 89, 95 (Miss. 2001)). "In Mississippi, the doctrine of res judicata requires four identities to be present before it applies: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identify of the quality or character of a person against whom the claim is made." *Hill v. Carroll Cnty.*, 17 So. 3d 1081, 1085 (Miss. 2009). "'The absence of any one of the elements is fatal to the defense of res judicata.'" *Id.* (quoting *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 674 So. 2d 1254, 1256 (Miss. 1996)).

Although InterNACHI does not directly respond to HomeSafe's argument with respect to the four identities, it does make a threshold argument that "the merits of InterNACHI's claims in this action were not 'litigated and decided' in the state court action." ECF No. 26 at 6.

---

[3] I note that InterNACHI relies on federal rather than state law in making its res judicata argument. *See* ECF No. 26 at 5–6. Although the federal standard is irrelevant here, I have attempted to discern from InterNACHI's argument those points that are relevant to the state test.

InterNACHI contends that because it still has a pending affirmative defense of fraudulent inducement in the state court case, "there has been no final judgment on the merits of whether HomeSafe engaged in fraud because a jury must still determine the fraudulent inducement defense." ECF No. 26 at 6. As HomeSafe points out, however, InterNACHI's "affirmative defenses to HomeSafe's pending claims are irrelevant for purposes of *res judicata* and do not have preclusive effect of an asserted claim." ECF No. 29 at 2. I agree. InterNACHI pled a veritable panoply of affirmative defenses to HomeSafe's state claims, one of which was fraudulent inducement. *See* ECF No. 23-1 at 2–5. The existence of an outstanding affirmative defense does not, however, change the preclusive effect of the state court's decision on InterNACHI's counterclaims or correct InterNACHI's failure to allege its RICO counterclaims in that suit.

Having assessed InterNACHI's threshold argument that there has not been a final adjudication on the merits, I now proceed to consider the four identities required for res judicata to apply under Mississippi law. For the reasons explained below, I conclude that InterNACHI's RICO and related claims should have been litigated in the state court suit and are therefore barred from resolution by this Court by res judicata.

*i. Identity of the Subject Matter of the Action.*

The identity of the subject matter of the action refers to the "substance" of the lawsuit. *Hill*, 17 So. 3d at 1084. Here, HomeSafe argues that the subject matter of both InterNACHI's federal suit and HomeSafe's state suit is the parties' contractual relationship and the question of whether HomeSafe made false representations to InterNACHI to induce it to enter the contract. ECF No. 23 at 6; *see also* ECF Nos. 22, 23-1. InterNACHI does not directly address the identity of the substance of the suit, but it notes that "while there is some overlap, [InterNACHI]'s claims

7

are not based entirely on the same facts as in the state court action." ECF No. 26 at 6. InterNACHI also notes that its complaint in this case "is based on facts that either occurred, or were discovered, only after the deadline passed within which those claims may have been litigated in state court action." *Id.* In this respect, InterNACHI is presumably referring to the 34 "threatening letter[s]" sent from HomeSafe to InterNACHI members between 2008 and 2011.

In *Harrison v. Chandler-Sampson Ins., Inc.*, the Mississippi Supreme Court found that the subject matter of a subsequent and prior action were the same. 891 So. 2d at 233. In that case, the plaintiffs in the original complaint sued their insurer, Chandler-Sampson, for improperly defending the plaintiffs pursuant to their insurance policy against a suit brought against them. *Id.* at 227. In the second case, "[u]nder the auspices of a new legal theory," the same plaintiffs claimed the insurer was "negligent in the writing of their insurance coverage due to Chandler-Sampson's failure to assure that the relevant policies covered" the legal claims that had been brought against the plaintiffs. *Id.* at 228. The court noted that "each case directly involves the written instruments that constitute the [plaintiffs'] insurance policies. Specifically, the substance of the both [sic] lawsuits is founded on Chandler-Sampson's relationship to this policy." *Id.* at 233. *Harrison* thus illustrates that the Mississippi courts interpret the subject matter of an action broadly.

Applying these principles to the case at hand, I find that the subject matter of InterNACHI's counterclaims in the state case is the same as the subject matter of its claims before this Court, namely: HomeSafe's alleged misrepresentations to InterNACHI and its members. InterNACHI's counterclaims in the state suit alleged that HomeSafe wrongfully represented to InterNACHI and its members that HomeSafe owned the exclusive right to the use of infrared technology in home inspections and that it would sue InterNACHI members for the

8

wrongful use of this technology.  *See* ECF No. 23-1 at 13–14.  In its amended complaint before this Court, InterNACHI similarly alleges that HomeSafe deceived inspectors into believing that HomeSafe owned the exclusive rights to use infrared technology in home inspections in order to gain licensing fees.  ECF No. 22 at 27.  InterNACHI also argues that HomeSafe fraudulently induced InterNACHI to enter a contract for HomeSafe's financial gain.  *Id.*  There is a distinction between the cases in that InterNACHI's counterclaims in the state case were based on HomeSafe's misrepresentations that induced InterNACHI to enter the contract and the subsequent damages related to the cost of defending the breach of contract claim, whereas now InterNACHI emphasizes the misrepresentations to InterNACHI's members and the damages they incurred when they paid licensing fees or refused to use infrared technology in their home inspections.  However, this distinction between the claims' focus does not change the fact that the same misrepresentations to InterNACHI and its members are at issue in both cases.

Moreover, though InterNACHI argues that the present suit is based on facts that either occurred or were discovered only after the deadline by which those claims may have been litigated in state court, this failure to previously plead those facts appears to be based on InterNACHI's failure to properly investigate the facts.  The 34 contacts alleged in the present case all occurred between 2008 and 2011, as noted above, which was well before InterNACHI filed its counterclaims in the state court case in 2016.  As such, these facts are not "new" in the sense that InterNACHI could not have discovered and pled them in the state case.  Instead, its failure to investigate the evidence it had in 2016 only undermines its attempt to raise these claims here for the first time.  *See* ECF No. 23-1 at 11 ("[T]here is evidence Plaintiff violated the federal wire fraud statute . . . by making communications by phone and email in furtherance of its scheme to defraud . . . [and] may also have violated the federal mail fraud statute.").

9

### ii. *Identity of the Cause of Action.*

"This identity requires the 'cause of action' in both suits to be the same," where the cause of action is defined as "the underlying facts and circumstances upon which a claim has been brought." *Hill*, 17 So. 3d at 1085. To determine the identity of the cause of action, Mississippi uses the transactional analysis espoused by the United States Supreme Court in *Nevada v. United States*, 463 U.S. 110, 131. *Id.* at 1086. Under the *Nevada* analysis, two causes of action are the same if they arise from the same transaction, "'to be determined by giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting *Nevada*, 463 U.S. at 131). Courts using this analysis are instructed to look past the legal bases for the claims and to rely on the factual and transactional relationship between the original and subsequent action; the Mississippi Supreme Court has warned against "relitigating a matter and eluding res judicata by raising a new legal theory under the same set of facts." *Little v. V&G Welding Supply, Inc.*, 704 So. 2d 1336, 1338 (Miss. 1997).

In this case, HomeSafe argues that the transaction at the heart of both actions is the negotiation and contract between HomeSafe and InterNACHI. ECF No. 23 at 7. HomeSafe contends that the facts and circumstances are identically pled in both cases, such that while the facts give rise to several possible theories of recovery, there is only one cause of action in both cases. *Id.* Again, InterNACHI does not address this identity head on, but it does contend that the elements required to prove a RICO case are distinct from those required to prove a claim for misrepresentation. ECF No. 26 at 6. However, the difference between a RICO claim and InterNACHI's previous legal claims in the state court are irrelevant for establishing this identity.

*See Hill*, 17 So. 3d at 1085. The allegations underpinning InterNACHI's state court counterclaims were HomeSafe's misrepresentations to InterNACHI and its members; those same misrepresentations to InterNACHI's members form the basis of its RICO claims before this Court. As such, the factual bases of both cases are closely related, and would sensibly by treated as a "convenient trial unit." *See Nevada*, 463 U.S. at 131.

       *iii. Identity of the Parties to the Causes of Action.*

To satisfy this identity, "strict identity of the parties is not necessary." *Hill*, 17 So. 3d at 1086. HomeSafe argues that since the parties to the federal action are identical to those in the state action, this identity has been met. ECF No. 23 at 7. InterNACHI contests this assertion on the grounds that it is acting as the assignee for home inspectors in this case, whereas it was not in the state action. ECF No. 26 at 6. Despite InterNACHI's argument, I find that this identity has been met. The case caption and description of the parties in InterNACHI's amended complaint both indicate that InterNACHI is bringing this case on its own behalf, just as it did in its state counterclaims. *See* ECF No. 22 at 1–2. It claims for the first time in the fact section of its amended complaint that it "brings this action as the assignee of numerous home inspectors that have assigned their claims against Defendants to InterNACHI," but it fails to identify who these inspectors are, which rights were assigned to InterNACHI, and when that assignment occurred. *Id.* at 5. There is thus no indication of a valid assignment of rights. Because this purported assignment is so vague and suspect, I reject it as grounds to escape res judicata. As a result, I find that the parties to the state court case were identical to the parties in this action.

       *iv. Identity of the Quality or Character of the Person Against Whom a Claim is Made.*

Although Mississippi courts have not "*specifically* state[d] what must be established to meet this prong," it has been satisfied when two defendants are of the same type. *EMC Mortg.*

11

*Corp. v. Carmichael*, 17 So. 3d 1087, 1091 (Miss. 2009). For example, this identity was met when the defendants in the previous and subsequent suits were "both mortgage lenders." *Id.* The Mississippi Supreme Court has also found the identity of the quality or character of the person against whom a claim is made to be present when the named defendant is the same in the subsequent action as in the previous action. *Hill*, 17 So. 3d at 1087. This identity is satisfied in this case because HomeSafe was the counter-defendant and Mr. Seddon was the third-party defendant in the state suit, and they are the defendants in the present suit.

Because the four identities are satisfied, InterNACHI's claim before this Court is barred by res judicata. InterNACHI's RICO claims and related claims (i.e., for injunctive relief and a declaratory judgment) could have been advanced in the state court suit, and as such are barred before this Court. Though res judicata is dispositive in this case, I note that I am also persuaded by HomeSafe's invocation of the doctrine of compulsory counterclaims. In the same way that claims that could have been advanced in a previous suit are barred by res judicata, compulsory counterclaims not raised in a previous suit are barred in subsequent suits under the Mississippi rule of compulsory counterclaim. *See* Miss. R. Civ. P. 13(a). Because InterNACHI's RICO claims arise out of the same circumstances as InterNACHI's state counterclaims, InterNACHI was required to raise these claims before the state court.[4] Its failure to do so thus acts as an additional bar to its RICO and related claims before this Court.

**ORDER**

Because InterNACHI's amended complaint is barred by res judicata and because it was a compulsory counterclaim, HomeSafe's motion to dismiss, ECF No. 23, is GRANTED. The case is dismissed with prejudice. Additionally, HomeSafe's motion to dismiss or transfer, ECF No.

---

[4] InterNACHI's reservation of the right to file a RICO counterclaim in state court is evidence that it was aware of the facts to support such a claim; as noted above, the facts it relies on in this case all occurred between 2008 and 2011, well before InterNACHI filed its state counterclaims in 2016.

14, is moot. As the prevailing party, HomeSafe is awarded costs to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54(1).

DATED this 5th day of February, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge