FILED
United States Court of Appeals
Tenth Circuit

March 11, 2019

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

INTERNATIONAL ASSOCIATION OF
CERTIFIED HOME INSPECTORS,
a Colorado nonprofit corporation,

    Plaintiff - Appellant,

v.

HOMESAFE INSPECTION, INC.,
a Mississippi corporation incorporated in
2003; HOMESAFE INSPECTION, INC.,
a Mississippi corporation incorporated in
2014; KEVIN SEDDON,

    Defendants - Appellees.

No. 18-1087
(D.C. No. 1:17-CV-01065-RBJ)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

    Plaintiff International Association of Certified Home Inspectors (Association),

appeals from the district court's order that dismissed its amended complaint against

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

defendants Homesafe Inspection, Inc. (Homesafe)[1] and Kevin Seddon. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *The Parties*

The Association is a Colorado non-profit and trade association that represents more than 20,000 home inspectors across the United States. Homesafe is a Mississippi corporation that claims ownership of a patent regarding the use of infrared technology in home inspections. Mr. Seddon is the president and a director of Homesafe.

In 2013, a member of the Association told the group's founder that he had been sued for violating Homesafe's patent. The founder contacted Mr. Seddon, who warned him that Homesafe would continue to sue home inspectors who used its patented technology without authorization. Not long thereafter, the Association and Homesafe entered into a license agreement that allowed the members to obtain a license from Homesafe to use its technology.

### B. *The Mississippi State Court Litigation*

In 2015, Homesafe filed suit against the Association in Mississippi state court for its alleged breach of the license agreement. Homesafe's complaint included claims for violation of the Mississippi Fair Trade Practices Act, unfair competition, unjust enrichment, breach of contract, and conversion.

---

[1] There is no material difference between the two Homesafe entities named as defendants other than their dates of incorporation.

Eventually, the Association filed an amended answer and counterclaims against Homesafe along with a third-party complaint against Mr. Seddon. The gist of the counterclaims was the contention that Homesafe and Mr. Seddon misrepresented the nature and scope of the patent to induce the Association and its members to enter into the license agreement. More specifically, the counterclaims alleged claims for fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, declaratory judgment, and rescission. In its counterclaims, the Association expressly reserved the right to add claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968:

> [The Association] is not presently seeking leave to add a claim under [RICO], [h]owever, based on the allegations . . . above, there is evidence [Homesafe] violated the federal wire fraud statute . . . [and] may have also violated the federal mail fraud statute. . . . As discovery is ongoing, [the Association] reserves the right to seek to add a civil RICO claim.

Aplt. App., Vol. 1 at 222.

At the close of discovery in May 2016, the Association's attorney wrote to opposing counsel and threatened "to add a civil RICO claim against Homesafe and Mr. Seddon" if the case did not settle under the terms proposed by the Association. *Id*. at 233. The case did not settle, but the Association's attorney never made good on the threat. Instead, seven months later, in December 2016, the court granted Homesafe's motion for summary judgment on the Association's counterclaims.[2]

---

[2] Trial was set for March 2018. However, the Association moved to continue the trial date on the grounds that it had filed suit against Homesafe and Mr. Seddon in federal district court. The court granted the motion and reset trial for March 2019.

3

Although the order does not say so expressly, the Association has admitted that its counterclaims were dismissed because it could not prove damages.[3]

### C.  *The Federal Court Litigation*

####   1.  *The Association's Amended Complaint*

In April 2017, the Association filed suit in the United States District Court for the District of Colorado.  The operative pleading—the Association's amended complaint—alleged four claims:  (1) violation of RICO; (2) conspiracy to violate RICO; (3) declaratory judgment to determine its rights and obligations to use Homesafe's patents and its common law rights to use infrared technology in home inspections; and (4) injunctive relief to enjoin Homesafe's alleged illegal activity.  According to the Association, Homesafe and Mr. Seddon engaged in a "continuing pattern of racketeering."  *Id*., Vol. 1 at 179.  The amended complaint cited letters written to 34 of the Association's members between 2008 to 2011, in which Homesafe demanded that they pay license fees to use its patented technology or they would be sued.

---

[3] In response to Homesafe's motion to dismiss in the federal suit, the Association stated that "the undisputed reason [the motion for summary judgment was granted was] due to the fact that, at that point, [the Association] was unable to specifically prove damages under Mississippi law."  Aplt. App., Vol. 2 at 324.

### 2. *Homesafe's Motion to Dismiss*

Homesafe and Mr. Seddon moved to dismiss the amended complaint on several grounds, including res judicata.[4] Their motion noted that under 28 U.S.C. § 1738, the preclusive effect of a state judgment is governed by the rules of preclusion of that state, and the "four 'identities' for application of res judicata" under Mississippi law are: "'(1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made'" Aplt. App., Vol. 1 at 200 (quoting *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1085 (Miss. 2009)). They then explained how each element was present by comparing the Mississippi suit to the claims in the federal suit.

Further, Homesafe and Mr. Seddon argued that the Association's claims were barred by Mississippi Rule of Civil Procedure 13(a) concerning compulsory counterclaims, which they described as "a companion rule to the doctrine [of] res judicata." *Id.* Rule 13(a) provides that a party must state as a counterclaim "any claim which . . . the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require . . . the presence of third parties over whom the court cannot acquire jurisdiction." As such, they maintained that because the federal claims were compulsory counterclaims under Rule 13(a) and the Association failed to raise them

---

[4] The additional grounds to dismiss included: (1) claim splitting and *Colorado River* abstention; (2) the *Noerr-Pennington* doctrine; (3) lack of venue; and (4) the failure to properly allege a RICO claim.

in the Mississippi suit, they were "barred" in the federal litigation. Aplt. App., Vol. 1 at 201 (citing *Tyler Marine Servs., Inc. v. Aqua Yacht Harbor Corp.*, 920 So. 2d 493, 496 (Miss. Ct. App. 2006)).

### 3. *The Association's Response*

The Association's response in opposition contained no meaningful response to the res judicata argument and never mentioned the Mississippi compulsory counterclaims. Instead, its "legal argument" began with a lengthy quote from a case from the Federal Circuit Court of Appeals, *Sharp Kabushiki Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368 (Fed. Cir. 2006), which explained the two branches of res judicata—claim preclusion and issue preclusion. Not only was this explanation unnecessary, it was based on the federal law of res judicata—not Mississippi law.

Then, continuing to rely on *Sharp*, the Association maintained that Homesafe and Mr. Seddon had to establish the following elements: "(1) an identity of parties or their privies; (2) a final judgment on the merits of the prior claim; and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case." Aplt. App., Vol. 2 at 326 (citing *Sharp*, 448 F.3d at 1370).

Applying the three *Sharp* factors, the Association argued that: (1) there was no identity of the parties "because [the Association] also brought [the federal suit] as assignee of home inspectors who were not parties to the state court action and who can prove damages resulting from Homesafe's misconduct"; (2) "there has been no final judgment on the merits of whether Homesafe engaged in fraud because a jury

must still determine the fraudulent inducement defense"; and (3) "while there is some overlap, [the Association's] claims are not based entirely on the same facts as in the state court action." *Id.* The Association further argued that the federal suit "is based on facts that either occurred, or were discovered, only after the deadline passed within which those claims may have been litigated in the state court action," and "the elements required to prove a RICO case are not the same as those required to prove a claim for misrepresentation or a fraudulent inducement defense." *Id.* The only legal authority cited by the Association was *Sharp*, and its fleeting references to the two suits lacked any detail or analysis.

### 4. *The District Court's Decision*

The district court found that the claims were precluded by the doctrine of res judicata and granted the motion to dismiss. First, the court acknowledged that "[a]ccording to the Mississippi law of res judicata, 'when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from re-litigating claims that were decided or could have been raised in that action.'" *Id*. at 407 (quoting *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005)). The court then addressed, and rejected, the Association's *only argument*—unsupported by any law from Mississippi or elsewhere—*that there was no final judgment because a jury had not determined the validity of its fraudulent inducement defense*: "The existence of an outstanding affirmative defense does not . . . change the preclusive effect of the state court's

7

decision on [the Association's] counterclaims or correct [the Association's] failure to allege its RICO counterclaims in that suit." *Id.* at 408.

Next, the district court moved to the four identities required for res judicata under Mississippi law. Regarding the first two identities, the court noted that because the Association relied on federal law, it had to "attempt[] to discern from [the Association's] argument those points that are relevant to the [Mississippi] test." *Id*. at 407 n.3. The court explained that it was further handicapped by the Association's failure to "directly address the identity of the substance of the suit," *id*. at 408, or "address [the] identity [of the cause of action] head on," *id*. at 411. Nonetheless, the court carefully and thoroughly examined the two suits and determined that the first two identities were present.

The district court also found that the third element—identity of the parties— was present. It rejected the Association's argument that the parties were not the same because it was bringing suit as assignee of individual home inspectors who were not parties to the state court action. Not only did the court find this argument to be at odds with the caption and description of the parties in the amended complaint, but the Association "fails to identify who these inspectors are, which rights were assigned to [the Association], and when that assignment occurred." *Id*. at 412. As such, the court rejected the "vague and suspect" alleged assignments "as grounds to escape res judicata." *Id*.

As to the fourth element, the district court explained that under Mississippi law, there is an "identity of the quality or character of the person against whom a

claim is made . . . when the named defendant is the same in the subsequent action as in the previous action." *Id*. at 413 (citing *Hill*, 17 So. 3d at 1087). As such, the court found this factor was satisfied "because HomeSafe was the counter-defendant and Mr. Seddon was the third-party defendant in the state suit, and they are the defendants in the present suit." *Id*.

Last, even though the district court found that "res judicata is dispositive in this case," it was "also persuaded by HomeSafe's invocation of the doctrine of compulsory counterclaims." *Id*. "In the same way that claims that could have been advanced in a previous suit are barred by res judicata, compulsory counterclaims not raised in a previous suit are barred in subsequent suits under the Mississippi rule of compulsory counterclaim." *Id*. (citing Rule 13(a)).

## II. STANDARD OF REVIEW

Ordinarily, we review the dismissal of a complaint on the grounds of res judicata de novo. *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). However, when an argument was not raised before the district court but is instead advanced for the first time on appeal, the court will only reverse if the appellant shows the district court's decision amounted to plain error. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).

"To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. "Plain error review presents an extraordinary, nearly insurmountable burden." *Royal Maccabees*

*Life Ins. Co. v. Choren*, 393 F.3d 1175, 1181 (10th Cir. 2005) (internal quotation marks omitted).

Finally, where a party has not "attempted to show how his new legal theory satisfies the plain error standard . . . the failure to do so . . . marks the end of the road for an argument for reversal not first presented to the district court." *Richison*, 634 F.3d at 1130-31.

### III. ANALYSIS

#### A. *Final Judgment*

In its response to Homesafe's res judicata argument, the Association raised one argument—unsupported by any legal authority—that the dismissal of its Mississippi state court counterclaims was not a final judgment because a jury had not determined the fraudulent inducement defense. Now, for the first time on appeal, the Association argues several new reasons why there is not a final judgment, citing Mississippi court rules and cases it never mentioned in its response. These arguments and authorities should have been raised in the district court, and the failure to do so means they have been forfeited. *See id*. at 1128 ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited.").

In *Employers Reinsurance Corp. v. Mid-Continent Casualty Co.*, 358 F.3d 757 (10th Cir. 2004), we noted several factors in reaching our conclusion there was no plain error. Those factors are present here. "[T]he error was not an act or omission by the district court," the complaining party "had ample opportunity to bring the error to the district court's attention" by an appropriate motion, and "the alleged error . . .

does not concern any matter of significant public policy . . . [because] [w]e are dealing with a private contract dispute in a business relationship." *Id*. at 770. "In short, the judicial proceeding below was fair, and the [failure of the Association to raise its arguments] should not raise serious doubts about the integrity of that proceeding or bring disrepute upon the district court." *Id*.

B. *Identity of Subject Matter*

On de novo review, we have examined the Mississippi cases relied on by the district court and agree with its thorough and well-reasoned analysis of this issue in the order dated February 5, 2018. *See* Aplt. App., Vol. 2 at 408-13.

C. *Identity of Parties*

In its response in district court, the Association argued that there was no identity of the parties because it was bringing the federal suit as the assignee of numerous individual home inspectors who were not parties to the state court action. Once again, the Association did not cite any rules or case law to demonstrate the sufficiency of this allegation.

For the first time on appeal, the Association relies on Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure to argue the sufficiency of the amended complaint regarding the alleged assignments. According to the Association, its bare-bones allegation that the claims had been assigned was sufficient to survive a motion to dismiss, citing *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012).

We review this issue de novo. In the district court, Homesafe argued that the caption and description of the parties in the amended complaint established an

identity of the parties. In response, the Association said only that it "brought this action as assignee of home inspectors who were not parties to the state court action," Aplt. App., Vol. 2 at 326, without citing the amended complaint or Rules 8 or 12. Nonetheless, the district court analyzed the sufficiency of the naked allegation and concluded that the "purported assignment is so vague and suspect" that it cannot defeat res judicata. Aplt. App., Vol. 2 at 412. In doing so, the court recognized that this threadbare allegation lacked the "details [the Association] should know and could properly have plead to satisfy the plausibility requirement." *Khalik*, 671 F.3d at 1194. In particular, the court found that the amended complaint "fails to identify who these inspectors are [who assigned their claims to the Association], which rights were assigned . . . , and when that assignment occurred. There is thus no indication of a valid assignment of rights." Aplt. App., Vol. 2 at 412 (citation omitted). We see no error in this ruling.

### D. *Declaratory Judgment*

Last, the Association concedes that it did not raise any arguments regarding its declaratory judgment claim in the district court and the arguments are forfeited. Therefore, we review the court's ruling for plain error.

The Association's apparent argument is that its claim for declaratory relief in the Mississippi suit cannot be barred by res judicata because a patent dispute can only be resolved in federal court. While we agree with the Association's general statement that patent disputes are within the exclusive jurisdiction of the federal courts, its arguments lack merit. First, the Association's counterclaim for declaratory

relief in the Mississippi suit was not dismissed because the court lacked jurisdiction to determine the validity of Homesafe's patent—the counterclaims were dismissed because the Association could not prove damages.  Second, the Association's counterclaim for declaratory relief in Mississippi did not challenge Homesafe's patent—it sought a declaration that it was fraudulently induced into entering into the license agreement.  Third, the Association's claim for declaratory relief in the federal court is not premised on the jurisdiction granted to the federal courts to determine patent disputes—it is a request to settle the controversy between the parties regarding the use of infrared technology in home inspections, and whether Homesafe misrepresented its rights in the technology in its dealing with the Association and its members.

The Association cannot meet the first test for plain error—that there was an error—let alone any of the other three factors.

## IV.  CONCLUSION

The judgment of the district court is affirmed.[5]

                                        Entered for the Court

                                        Bobby R. Baldock
                                        Circuit Judge

---

[5] Because we affirm the district court's res judicata ruling, we do not address the address the court's alternative grounds for dismissal, i.e., the claims were compulsory counterclaims under Mississippi law.